| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** <br> **SOUTHERN DISTRICT OF NEW YORK** | **FOR PUBLICATION** |

|  |  |
|---|---|
| In re: ) | Chapter 15 |
| ) |  |
| MOOD MEDIA CORPORATION, ) <br> Debtor in a Foreign Proceeding ) | Case No. 17-11413 (MEW) |
| ) |  |
| Debtor. ) |  |
| ) |  |

**BENCH DECISION REGARDING (I) PETITIONS FOR RECOGNITION OF FOREIGN PROCEEDINGS, (II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

A P P E A R A N C E S :

KIRKLAND & ELLIS LLP
*Attorneys for the Debtor and other Entities*
300 North LaSalle
Chicago, IL 60654
    By:  Bradley T. Giordano
          Josh Sussberg

KIRKLAND & ELLIS LLP
*Attorneys for the Debtor and other Entities*
601 Lexington Avenue
New York, NY 10022
    By:  Thayne D. Stoddard
          Matthew Solum

STIKEMAN ELLIOT LLP
*Attorneys for the Debtor and other Entities*
5300 Commerce Court West
199 Bay Street
Toronto, Canada M5L 1B9
    By:  Alexander D. Rose

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
*Attorneys for Creditors Apollo & GSO*
1285 Avenue of the Americas
New York, NY 10019
    By:  Mark M. Nixdorf
          Jeffrey D. Saferstein

EMMET MARVIN & MARTIN, LLP
*Attorneys for the Bank of New York Mellon*
120 Broadway
New York, NY 10271
      By:  Edward P. Zujkowski

**MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**

      Mood Media Corporation ("Mood Media") is a Canadian company.  It is the applicant in a proceeding under Section 192 of the Canadian Business Corporations Act that is pending in Ontario and that was filed May 18, 2017.  Fourteen direct and indirect U.S. subsidiaries of Mood Media Corp. are also alleged to be Debtors in the Canadian proceeding.  Mood Media and the fourteen U.S. companies all seek recognition of the Canadian proceedings as foreign nonmain proceedings in which each of them claims to be a Debtor.

      The evidence before me shows that some or all of the relevant U.S. companies are guarantors of some of Mood Media's obligations, including $350 million of 9.25% senior unsecured notes due 2020.  In the Canadian proceeding, Mood Media submitted for approval a proposed scheme of arrangement under which the 9.25% notes would be exchanged for new company notes, plus some common stock, and the old common stock of Mood Media would be cashed out at a price of Canadian 17 cents per share.

      Mood Media and its U.S. subsidiaries now seek recognition of the Canadian proceedings as foreign nonmain proceedings, although I understand from today's hearing that they actually seek recognition of the Canadian proceeding as a foreign main preceding in the case of Mood Media itself.  They also seek or will seek recognition and enforcement of orders entered in the Canadian proceeding that approve the scheme of arrangement, and that enjoin certain actions by certain creditors.

I will enter an order that gives substantive relief to the applicants here that is analogous to what is requested, and that I believe gives them what they desire, but not on the theories they have proposed.

The applications for recognition raise two issues.

First, are the fourteen U.S. companies "debtors" in a foreign proceeding? For purposes of Chapter 15, the term "debtor" is defined in section 1502(1) of the Bankruptcy Code as "an entity that is the subject of a foreign proceeding." 11 U.S.C. § 1502(1). A "foreign proceeding" is defined in section 101(23) of the Bankruptcy Code as "a collective judicial or administrative proceeding in a foreign country . . . under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23).

It has been acknowledged before me today that the relevant U.S. companies could not have commenced their own proceedings under Section 192 of the Canada Business Corporations Act. One must be a Canadian corporation in order to do so.

The application for commencement of the Canadian proceeding has been provided to the Court, and it was submitted with some of the motion papers that were filed on the first day. It makes clear that the application was made by the Canadian company, Mood Media Corporation, for an arrangement with regard to its common shares and notes. The "Applicant" who sought relief in Canada and who petitioned for the approval of the scheme of arrangement was Mood Media Corporation. The only reference to the U.S. companies in the application itself is in the title of the document, which vaguely states that the matter relates to a proposed plan of arrangement "of" Mood Media Corporation and "involving" the U.S. companies.

3

The Canadian court entered an interim order that has also been provided to the Court. It authorizes the Applicant, Mood Media Corporation, to arrange meetings of its shareholders and of the holders of its 9.25% notes. The interim order does not authorize or direct the U.S. companies to do anything, or contemplate that they will do anything. Instead, the reorganization proceedings that were contemplated were as to the parent company's restructuring and replacement of its notes and common stock.

In Canada, only the parent company's shareholders and the holders of the parent company's notes were asked to vote on the proposed scheme of arrangement. For that purpose, as I mentioned, the Applicant (the parent company) was authorized to arrange meetings. The U.S. companies were not authorized to do so, and were not even listed among the persons who had the right to speak at the meetings that were being arranged.

It is not even clear from the record that I have that the foreign representative was actually appointed by the Canadian court to act for the U.S. companies. The Canadian court's order said the foreign representative was appointed for "the proceedings." There is no explicit statement that the foreign representative has even been authorized to act on behalf of the U.S. companies who were "involved" in the proceedings.

I have also reviewed the Canadian court order approving the scheme of arrangement, which was filed this week. It makes clear, again, that the arrangement is an arrangement "of" Mood Media Corporation. It includes only the vague language about the scheme "involving" the U.S. companies to suggest that the U.S. companies are even affected by it. The scheme of arrangement requires the noteholders of Mood Media to exchange their notes, and in the process, to release any guarantee claims against the U.S. companies, but it does not affect other creditors

of the U.S. companies, and does not affect any assets or business operations of the U.S. companies.

In short, there is no indication in any of the papers submitted to me or in the testimony that I heard today that the Canadian court purported to take jurisdiction over the business or assets of the U.S. companies, or that it even could have done so. The Canadian court ordered that creditors refrain from taking certain actions, but that is all. It exercised no control, gave no directions and organized no procedures by which the U.S. companies were separately directed or authorized to deal with their creditors, or to reorganize their obligations, or to do anything. The U.S. companies, in short, were just there as beneficiaries of orders that related to the restructuring of the parent company's obligations.

The applicants before me today have urged that I take a contrary view of what is required to make somebody a "debtor" in a foreign proceeding. They argue that Canadian courts may order lots of parties to do lots of different things, and that you don't have to be an Applicant to be "subject" to orders that a Canadian court may issue in a restructuring case. They urge me to find that since the U.S. companies will get releases of their guarantees, and since U.S. creditors have been enjoined from taking certain other actions, that the "business or assets" of the U.S. companies are thereby "subject to" the control or supervision of the Canadian court, and the U.S. companies therefore are "debtors" in those proceedings.

Just putting the proposition in that form, however, should be enough to show how much of an overstatement it is. For example, in arguing that the Canadian courts can assert power over various entities, the applicants before me have contended that Canadian courts have power to order financing parties to honor their commitments in connection with a restructuring. Maybe

5

they do. But surely that does not mean that a lender in a Canadian proceeding is now supposed to be considered to be a "debtor" in a foreign proceeding for purposes of Chapter 15.

Similarly, the brief submitted on behalf of the applicants makes clear that the Canadian statute contemplates that stock of a Canadian company may be exchanged for stock of a non-Canadian company. In that regard, the non-Canadian company may be a party who is affected by a Canadian proceeding or "involved" in it, and may even be ordered to honor its commitments in connection with that proceeding. That seems entirely right. But the fact that the Canadian court can exercise such powers over that non-Canadian company as to those arrangements hardly makes that company a "debtor" in the Canadian proceeding.

There are plenty of instances in chapter 11 cases in this Court where someone may buy assets, or propose a merger, or offer to issue stock in a non-bankruptcy company either to creditors or to shareholders of a debtor. I may have jurisdiction in such a case over that proposal, and if I confirm a plan I have jurisdiction to order people to comply with their obligations under the plan. But nobody would ever reasonably contend that an acquiring company in such a case is now a chapter 11 "debtor," or that the buyer's own obligations are being restructured by reason of its participation in a transaction that is authorized by another company's chapter 11 plan.

Similarly, a foreign proceeding and a U.S. proceeding often result in releases of claims against officers and directors, or other parties. There are also often releases of claims against indenture trustees when securities are canceled or exchanged. These orders affect releasees, but nobody would reasonably argue that the ability of a court to release those claims means that the releasees are persons who are subject to the proceedings, and subject to the jurisdiction of the court, in a way that makes them "debtors" in the proceedings.

In fact, a Court in any insolvency proceeding exercises the right to cancel or restructure a creditor's obligations. In that regard, the creditor's claim is subject to the Court's authority, and to the extent that the creditor's claim is an asset, its asset is being affected by the foreign proceeding. A creditor's asset is "subject" to the court's authority as a result, but nobody would think that is sufficient to allow the creditor itself to be treated as it if were a "debtor" in a foreign proceeding.

The "debtor" in the foreign case is the company whose restructuring or liquidation is the subject of the foreign proceeding. In this case, the Canadian court may have had the authority to direct creditors of the Canadian parent to release the guarantees provided by the U.S. companies; nobody has appeared before me to challenge the Canadian court's authority to do that. The U.S. companies may thereby be affected by the Canadian proceeding, in the same way that a third-party releasee may be affected by a confirmed chapter 11 plan in the United States. But that release of the guarantee is not enough to make the U.S. companies "debtors" in the foreign case. They are not applicants in the Canadian case; they were not authorized or directed to do anything to effect a reorganization of their own liabilities; and no order was issued that exerted any control, or purported to exert any control, or contemplated any control over the assets and affairs of the U.S. companies. In fact, the only effect that the proceeding had on the U.S. companies was that the Candian court issued orders that prevented the *creditors* of the U.S. companies from doing certain things. None of this is sufficient to make the U.S. companies "debtors" in the way that was contemplated by Chapter 15.

My own orders in the *Tervita* cases (Case No. 16-12920 (MEW)) have been cited as supposedly representing a contrary ruling. However, if the *Tervita* cases raised any issues that

7

are at all analogous to issues raised here, that was not brought to my attention, and I did not rule in *Tervita* on the issues present here.

I have also been told that in two Delaware cases, recognition was given to proceedings under the CBCA involving U.S. companies who were not applicants in those proceedings. I have looked at the dockets in those cases, and did not find any indication that the issue was raised or litigated, or that any opinions on the question were issued. So I cannot give any credence to the suggestion that these other cases call for a contrary decision to the one I have reached.

The second question raised by the petitions in this Court is whether the Canadian proceedings would qualify as foreign nonmain proceedings, even if the U.S. companies were debtors in those cases.

As to Mood Media, it appears to have its center of main interest in Canada, and there does not seem to be any issue as to whether the proceeding in Canada should be recognized as a foreign main proceeding for Mood Media. As to the U.S. companies, however, there is no contention that they have their centers of main interest in Canada, so the Canadian proceeding cannot be a foreign main proceeding as to the U.S. companies. In addition, the Canadian proceeding cannot be a "foreign nonmain" proceeding unless it is a foreign proceeding "pending in a country where the debtor has an establishment." 11 U.S.C. § 1502(5).

Section 1502(2) of the Bankruptcy Code defines an "establishment" as "any place of operations where the debtor carries out a non-transitory economic activity." 11 U.S.C. § 1502(2). The Collier's treatise explains that the purpose of this definition is to limit the definition of foreign proceedings "to those pending in a country where the Debtor has a place of business." *See* 8 COLLIER ON BANKRUPTCY, ¶ 1502.01[2] (16th ed.); *see also In re Creative Fin.*

8

*Ltd.*, 543 B.R. 498, 520 (Bankr. S.D.N.Y 2016) (holding that in order to have an establishment in a country a debtor must "conduct business in that country.")

Courts have similarly held that in order to have a place of operations from which a debtor carries out economic activity on a non-transitory basis, the debtor must have "a seat for local business activity" in the foreign country that is relevant, and that it must engage in business or professional activity from that seat of local business activity that has a "local effect on the marketplace." *Id.*; *see also In Re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 131 (Bankr. S.D.N.Y 2007) (holding that the requirements of a "place of operations" from which "economic activity" is conducted require a seat for local business activity that has a local effect on the markets); *In Re British Am. Ins. Co.*, 425 B.R. 884, 915 (Bankr. S.D. Fla. 2010) (same); *Lavie v. Ran*, 607 F.3d 1017, 1027 (5th Cir. 2010) (holding that the definition of establishment requires "a place from which economic activities are exercised on the market (*i.e.* externally), whether the said activities are commercial, industrial or professional.").

In other words, the definition contemplates the existence of a place of business in the foreign country from which market-facing activities are conducted. Here, the U.S. companies admittedly have no office or physical presence of any kind in Canada. The evidence that was offered showed that the companies as a whole operate as an integrated enterprise to some extent, and that management, financial management, cash management, accounting, treasury, internal audit, legal, risk management, human resources, and procurement functions may be shared to some extent. The evidence also showed that the U.S. companies pay management fees to the Canadian parent for services that are provided. However, none of this suffices to show that the U.S. companies maintain a place of operations in Canada from which market-facing activities are

9

conducted. The parent company may employ people who provide services of various kinds to the U.S. companies, but that does not mean the U.S. companies have places of business in Canada.

The evidence also showed that some or all of the U.S. companies transact for the procurement of professional and administrative services in Canada, including accounting services. However, I know of no support for the idea that hiring others to provide services for you amounts to establishing a place of operations from which you conduct economic activity of your own in a jurisdiction.

There is evidence before me that the U.S. companies are subject to oversight by the Canadian parent company's directors, but that has nothing to do with whether the U.S. companies have a place of operations in Canada from which they conduct economic activity. The U.S. companies also are guarantors of debt obligations that were issued in Canada, and they pay intercompany obligations to the Canadian parent company, but having liabilities or paying debts in a jurisdiction does not mean that the U.S. companies have a place of operations there.

Three of the U.S. companies apparently have license arrangements with Canadian entities for intellectual property. That certainly is not enough to show that all of the U.S. companies engage in economic activity in Canada. Even as to the three U.S. companies that have the licensing arrangements, the evidence was that that economic activity is conducted entirely by U.S. employees who are located in the United States. The statute does not merely require economic activity; it requires the existence of a place of operations in the foreign country from which the economic activity is conducted. The evidence did not support the existence of such a place of operations. To the contrary, it showed that the economic licensing activity, even if it related to Canada, was conducted from a place of operations that is in the United States.

The evidence also was to the effect that the U.S. companies may have contracts or contacts of various kinds with affiliates, franchisees, or distributors in Canada, but nothing was identified that showed that the U.S. companies themselves have places of operations in Canada, from which outward-facing market activities of any kind were conducted.

I am aware of cases that hold that not much is needed in order to show that an "establishment" exists. I am aware of cases, for example, that have held that the presence of a few employees in an office who receive payments of subscriptions for investments in funds is sufficient to show that a "place of operations" existed from which non-transitory economic activity was conducted. But I do not even have that in this case. I have no employees, nothing in Canada that under any applicable case law authority could be construed as a place of operations of the U.S. companies themselves. There may well be connections to Canadian entities or liabilities, but that falls short of showing that any of the U.S. companies has an establishment in Canada.

I therefore will recognize the Canadian proceedings as foreign main proceedings as to Mood Media Corporation, the Canadian parent company, but I will deny the request that I recognize the Canadian proceedings as foreign nonmain proceedings in which the U.S. companies are debtors. I do not believe they satisfy either of the two tests that I have described.

As a practical matter, though, I do not think that will alter the relief that will be available to the U.S. companies. The orders entered in Canada affect the U.S. companies in two ways. First, they require an exchange of the 9.25% notes for new notes, and in doing so they free the U.S. companies from their guarantee obligations as to the 9.25% notes. I can and will enforce that portion of the Canadian court order in connection with my recognition of the order as to the Canadian parent company.

The orders by the Canadian court also bar counterparties from contracts or debt instruments from invoking *ipso facto* clauses, based on the U.S. companies' involvement in the Canadian proceedings. For the reasons I have stated here, I do not think the U.S. companies were "debtors" in the Canadian case, and therefore I do not think that *ipso facto* clauses could or should be invoked as a result. But to the extent anyone wanted to claim otherwise, and argue that the U.S. companies were "debtors" in Canada, then in that instance the U.S. companies would and should be entitled to recognition in this country of the order entered by the Canadian court that would bar such claims. Accordingly, as part of recognition of the orders entered by the Canadian court in the parent company's case, I will include in my order a direction that counterparties to debt instruments and contracts with the U.S. companies will be barred from claiming that the U.S. companies' involvement in the Canadian proceedings amounted to their participation as "debtors," or to the commencement of insolvency proceedings as to the U.S. companies.

Counsel to Mood Media is directed to submit a proposed order that reflects these rulings.

Dated: New York, New York
June 28, 2017

/s/ **Michael E. Wiles**
United States Bankruptcy Judge